FRANK DAVIS, ADMINISTRATOR *v.* EARVIN KELCH DAVIS

5-5703                                        473 S.W. 2d 172

Opinion delivered November 15, 1971
[Rehearing denied December 20, 1971.]

*Butler & Hicky,* for appellant.

*Giles Dearing,* for appellee.

CONLEY BYRD, Justice. Appellee Earvin Kelch Davis brought this action after the death of her husband Julian Dean Davis to set aside a divorce he had obtained upon constructive service on February 11, 1965, on the ground that he had committed a fraud upon her and the court in representing she was a nonresident when in fact she was living with him when suit was filed and the decree entered. The trial court found that the parties were living together at the time and declared void the February 11, 1965 decree. For reversal, appellant Frank Davis, Administrator of Julian's estate, contends:

I. The Chancellor's finding that Julian Dean Davis perpetrated a fraud upon the Court and appellee in obtaining his divorce in February of 1965 is clearly erroneous in that it is contrary to preponderance of the evidence and the weight of evidence.

II. The Chancellor's finding that appellee was not estopped and that laches does not apply under the circumstances and facts of this case is clearly erroneous and against the preponderance of the evidence.

III. The lower Court erred in not permitting all of appellant's witnesses to testify on the petition to vacate the decree of April 17, 1970.

It is not contested that appellee and Julian Davis were married the first time on February 15, 1952, divorced in January 1958, and remarried April 18, 1958. On February 15, 1963, appellee filed suit for divorce. While that action was pending, Julian Dean Davis on November 18, 1963, filed a separate action for divorce in the same court. Both of these suits were dismissed June 22, 1964. On January 4, 1965, Davis filed the suit that is now in controversy and alleged that appellee was a nonresident. The attorney ad litem report shows that the notice he mailed was returned stamped "addressee unknown". A decree was entered on this complaint on February 11, 1965. Julian Dean Davis died on January 20, 1969, and the present action was commenced on February 24, 1969. All other facts are contested.

Appellee testified that she lived with Davis from the fall of 1964 up until his death, except for a short period in 1967 when Davis had beat her up. She states that she did not know Julian Dean Davis had filed the 1965 action or taken a decree therein until the family refused to let her sit with them at the funeral. Her testimony was that she was living with Julian Dean Davis at Twin Bridges on January 4, 1965, and that they lived there until January 21, 1965. They then moved to Memphis where they lived until July. From Memphis they moved to 219 Fussell, Forrest City, Arkansas. After about a year

they moved from Forrest City back to the farm at Twin Bridges. In 3 or 4 months they moved from the farm back to the same place in Memphis where they remained for about 5 months. With respect to the period from January 4, 1965, through January 21, 1965, appellee testified that she was treated by Dr. E. C. Clay, a dentist, on January 4, 1965, and on January 12, 1965, her foot was burned and she was treated by Dr. E. J. Chaffin. She also had a birthday party on January 19, 1965, which was attended by a number of people.

Appellee corroborated her testimony with a receipt from Dr. E. C. Clay dated January 4, 1965, for $50.00; by a sales slip from Kemp Pharmacy, Inc., dated January 19, 1965, for one box of candy and one card (this was allegedly purchased by Mr. Davis for her birthday), and a sales slip from St. Vincent De Paul Salvage Store Inc., dated January 26, 1965, for the purchase of a washer and dryer to be delivered to her Memphis address. Introduced also was the hospital record where Julian Dean Davis, in admitting himself to the hospital on January 8, 1969, before his death on January 20, 1969, listed appellee as his wife.

Another item that deserves special mention is a grocery receipt book. Appellee testified that during 1964 and 1965, they purchased on credit groceries and gasoline from Alma Ross at Widener. In getting ready for trial she asked Mrs. Ross if she had any receipts showing that appellee and Julian Dean Davis did business with her in 1964 and 1965. At the time the request was made Mrs. Ross was busy but told her if she would come back later she would see what she could find. About two hours later Mrs. Ross exhibited the book showing purchases by appellee and Julian Dean from October 14, 1964, through February 16, 1965. Each ticket in the book is signed either by appellee or Julian Dean Davis. When appellee called Mrs. Ross to the witness stand Mrs. Ross admitted that she gave the book to appellee but stated: "I don't know why she got me in here but I am not going to get myself in any trouble and I did not buy the store until September of 1965, but I did know them before." On cross-examination Mrs. Ross stated that

when appellee came by and asked for the tickets, she (Mrs. Ross) just made them up for her and gave them to her.

Mrs. W. H. Reeves testified that appellee and Julian Dean Davis rented an apartment from her in Memphis on January 21, 1965. Dr. E. C. Clay verified that he worked on appellee's teeth in January 1965 and that he signed the receipt on January 4, 1965. Appellee's mother Mrs. Lillie Mae Phillips, her stepfather Earnest Phillips, her daughter Glenda Kelch, Irene Warner and Gaylon Warner all verified that they attended a birthday party at Twin Bridges when Julian Dean Davis gave appellee a blue negligee and gown. Dr. E. J. Chaffin verified that his records showed that he had treated appellee in January and February 1965, for a burn on her right foot.

Hugh Sweatt testified that he visited with Julian Dean Davis from October 1964 until October 1965, and was frequently with Davis at the Twin Bridges farm. During those times appellee Earvin Kelch Davis was not living with Davis. He did not see appellee until sometime in March or April 1965, when he saw her in an apartment in Memphis. Hugh Sweatt's wife Margaret testified that she saw Dean Davis in her attorney's office on February 6, 1965 and learned that he was also getting a divorce. She was in Dean's house at Twin Bridges in April 1965, and appellee was not there. In fact the house looked like no one kept it for him. In April 1965 she and her husband had steaks in Julian Dean Davis' apartment in Memphis.

Norris Burns testified that he lived 2½ to 3 miles from Julian Dean Davis in 1965 and 1966 and that after appellee left Julian Dean Davis in 1964 he did not see her anymore until he moved from there in January of 1967. His wife Lucille Burns verified that they were frequent visitors in the Davis house from 1964 until they moved in 1967. She says that when she saw appellee in the latter part of 1966 appellee told her: "I can get along (better) by not being married to him than I can being married to him."

Sally Moore testified that she started working for Davis in October 1964 and worked for him until April 1965. Her duties were to cook breakfast and clean house. During that time appellee was not there.

James Davis, a brother of Julian Dean Davis, testified that appellee was not living with his brother in 1964 and 1965. On cross-examination he stated that to his knowledge Julian Dean never did live in Memphis.

Don Edmonds, the manager of the Holiday Inn, testified that appellee worked for him from October 27, 1967, through November 20, 1967, under the name of Ellen Marlene Kelch.

Cecil Clark testified that Julian Dean Davis filed his 1965, 1966 and 1967 income tax returns as a single man and that although he knew appellee, he never saw her with Davis.

Upon the foregoing record the Chancellor found that the February 11, 1965, divorce decree was null and void. Thereafter on a petition to reopen for newly discovered evidence the Chancellor heard the testimony of Glenda Kelch, Elmer Christy, Naomi Kelch, E. J. Butler and Earl Davenport on behalf of appellant and rebuttal testimony by appellee and her then husband Gordon Campbell.

Elmer Christy testified that he was involved with Glenda Kelch in a sexual matter and that Glenda told him that she and her mother had lied when they first testified.

Naomi Kelch testified that she married appellee's son by a prior marriage on July 11, 1969, before the trial of the case on July 15th and 16th and that she had previously agreed with Mrs. Davis to say that she was at the birthday party on January 19, 1965, but she knew it was wrong and told appellee so. After it was established on cross-examination that prior to the trial on July 15th and 16th, she had also told appellant's coun-

sel that she was not at the birthday party, the following occurred:

"JUDGE SMITH: You talked to her Mr. Butler and you knew what she knew and you did not ask her to be a witness.

MR. BUTLER: I thought she was hostile. But I think I can ask her if Mrs. Davis asked her. Mrs. Davis in her deposition said this person would be called.

JUDGE SMITH: You should have known she said she was not there.

MR. BUTLER: The purpose of this is to show that Mrs. Davis was trying to get this young lady to testify. I did not know what she would say on the witness stand.

JUDGE SMITH: I am going to let you make a record on it. Where she was called and you subpoenaed her and didn't call her I don't know how you can make her testify later but you can make your record over Mr. Dearing's objections."

Glenda Kelch testified on the petition to reopen that she testified incorrectly at the trial on July 15th and 16th. That in January and February of 1965 she and her mother were living in California and that on January 14, 1965, she witnessed the marriage of her mother to Harold Koleber. She then went to her father in Illinois and did not see her mother until sometime in April 1965. At that time her mother met her at the plane in Memphis and they went to Dean Davis' place on the farm. At the farm Dean Davis showed appellee some papers and said they were divorce papers. On cross-examination she was thoroughly interrogated about a letter allegedly written by her on a typewriter but unsigned. During the cross-examination it was developed that she was pregnant by Elmer Christy, that he had not married her, that he was the only person whom she had told that she had lied at the trial until she signed the af-

fidavit in the office of appellant's counsel on February 27, 1970, and that she was presently living with Elmer Christy in Texas. With reference to the letter, she admitted that she wrote some parts of it but insisted that what she wrote was in long hand. She denied writing other parts. After stating that she had had no prior contact with counsel for appellant, she testified that her affidavit was already prepared when she got to counsel's office and that she had some changes made before she signed it.

E. J. Butler, appellant's counsel, presented a certified but unauthenticated marriage license from the State of California showing that on January 14, 1965, a Marliena Mitzah married a Harold Dean Koleber and that Glenda Kelch was a witness.

Earl Davenport, a handwriting expert, testified that the "m's" and "i's" in the "Marliena Mitzah" were similar to the "m's" and "i's" in the specimens of appellee's handwriting presented. On cross-examination he testified that the signatures of Julian Dean Davis on the Alma Ross grocery tickets when compared to his handwriting on deeds executed and in evidence were made by the same person. He also identified the appellee's signatures on the grocery tickets as having been made by her.

Appellee in rebuttal denied that she was never married to Harold Dean Koleber and denied that she was the "Marliena Mitzah" who signed the marriage license. Then she identified the typewritten letter about which Glenda Kelch was interrogated as being a letter received from Glenda. Gordon Campbell, appellee's present husband merely identified the typewritten letter as one received in the envelope that Glenda Kelch admitted mailing to her mother. A portion of the letter dated January 20, 1970, is as follows:

> "Well, Mom I know you are wondering when i am going to tell you, what Elmer, and I had a long talk about, I wish i didnt have to tell you, but you would find out anyway, and i would rather you

heard it from me first, Mom, you have always tried to understand, what i do, Please Please, try this time, because i need you, more than I ever could again, Mom, I know what I am about to tell you will hurt, but it is something I have to do, I dont have a choise in the matter, please believe that, It is either you, are my Baby, and I cant take the chance of Elmer, having the welfare taking it away from me, Mom, he has given me a choice, he wonts me to go to the Lawyer and sign a paper, saying that I lied in court, that there wasn't a birthday party, and that you, were the one that married that man in California, and i was there, and know that it was you that did it, If I will sign all that, Elmer has promised that we would leave here, and go to Hot Springs, or Texas, His Mother lives in Hot Springs and his grandmother, in Texas, he said that the Davis Family would pay him enough that we could leave, get married, and pay my hospital bills, when i have the Baby but if i dont sign, he wont marry me, and he will do every he can to see that i lose the Baby."

Upon the whole record, we cannot say that the chancellor's finding that the parties were living and residing together at the time the divorce decree on constructive service was rendered is against a preponderance of the evidence. Neither do we find an abuse of discretion in refusing to open the decree on the proof presented. In the first place the handwriting expert in identifying the Julian Dean Davis signatures on the Alma Ross grocery tickets as that of Julian Dean Davis corroborated the appellee's testimony that they traded there during the times shown. Furthermore, the photographic copies of the marriage license and certificate of marriage in California were not authenticated and were not admissible. Ark. Stat. Ann. § 16-502 (Repl. 1968), upon which appellant relies to make photostatic copies of records admissible applies only to such records, the originals of which would be admissible. Of course, even the original record of the alleged California marriage would not be admissible until authenticated.

Appellant also contends that appellee is estopped to contest the validity of the divorce because she sometimes went under the name of Earvin Kelch. We find this to be without merit. The record shows that when they were separated in 1967 appellee testified she went under the name of Ellen Kelch to keep Julian Dean Davis from finding her and also at other times he had her to use the name Kelch for income tax purposes. Appellant's contention completely overlooks the fact he was holding her out as his wife to the hospital as late as January 8th before his death on the 20th.

Appellant also contends that the court erred in refusing to let him present the testimony of other witnesses on his petition to open and vacate. Here we find no abuse of discretion. The witnesses proffered had all testified at the original trial.

Affirmed.